

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00376-CV

_____

EX PARTE K.T.

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 19-5358-431

Before Gabriel, Kerr, and Bassel, JJ.
Opinion by Justice Gabriel
Dissenting Opinion by Justice Bassel

## OPINION

## I. INTRODUCTION

In two issues, the Texas Department of Public Safety (the Department) challenges the trial court's "Order Granting Expunction of Criminal Records," which expunged the records of appellee K.T.'s 2017 driving-while-intoxicated arrest because she had been acquitted of the offense. The Department argues that K.T. was not entitled to expunction because she has a 2013 DWI conviction and, in the Department's view, the governing expunction statute prohibits the expunction of arrest records relating to an acquitted offense when the acquitted person has once before been convicted of the same or similar offense even if the two offenses arise out of separate arrests. We cannot agree with the Department's construction of this part of the expunction statute; therefore, we affirm the trial court's judgment expunging all records relating to K.T.'s 2017 DWI arrest.

## II. BACKGROUND

The facts are undisputed. In 2013, K.T. was charged with DWI, a Class A misdemeanor under the Penal Code. *See* Tex. Penal Code Ann. § 49.04(d). K.T. pled guilty to a Class B misdemeanor and was placed on community supervision. K.T. successfully completed her term of community supervision in 2015 and was discharged.

In 2017, K.T. was arrested and charged again with DWI. A jury found K.T. not guilty of this alleged DWI. The "Judgment of Acquittal by Jury" notified K.T.,

pursuant to Code of Criminal Procedure Article 55.02, that "[]she may have a right, upon proper motion, to have an expunction of the records and files pertaining to the charge for which []she was acquitted."

After her acquittal, K.T. filed a "Petition for Expunction of Criminal Records" pertaining to her 2017 DWI arrest. The petition alleged that she had been acquitted of the charge that resulted from the 2017 DWI arrest and that she "was not convicted of and [did] not remain subject to prosecution for any another offense arising out of the same criminal episode." The petition did not mention K.T.'s 2013 DWI conviction. *See* Tex. Code Crim. Proc. Ann. art. 55.02, § 2(a), (b) (setting forth required information for expunction application, which does not include prior arrests for same or similar offenses).

The Department did not appear for the hearing on the expunction petition, though a representative of the Denton County District Attorney's Office did. The trial court ordered that "all records and files pertaining to the [2017 DWI] arrests[] . . . be expunged." The expunction order also recited that K.T. "was not convicted of and does not remain subject to prosecution for any [other] offense arising out of the same criminal episode."

The Department filed a timely motion for new trial. *See* Tex. R. Civ. P. 320, 329b(a). In essence, the Department contended that K.T. was not entitled to have the 2017 DWI arrest records expunged, even though she had been acquitted, because she had been convicted once before of the same type of offense—the 2013 DWI. The

3

Department argued that the expunction statute incorporates Penal Code Section 3.01's definition of "criminal episode," which is defined expansively:

> A criminal episode is defined as the commission of two or more offenses when "*the offenses are the repeated commission of the same or similar offenses.*" Tex. Penal Code § 3.01(2) (emphasis added). Here, [K.T.] was charged with Driving While Intoxicated 2nd, the repeated commission of the same or similar offense as the prior DWI conviction. The acquitted offense arose out of the same criminal episode because it was the "repeated commission of the same or similar offenses[.]" Tex. Penal Code § 3.01(2). Although the Petitioner was acquitted of Driving While Intoxicated 2nd, she was convicted of the prior charge of Driving While Intoxicated. Accordingly, the court "*may not* order the expunction of records and files relating to [the] arrest" for the acquitted offense. Tex. Code Crim. Proc. Art. 55.01(c) (emphasis added).

The trial court conducted a hearing on the Department's motion for new trial. At that hearing, the trial court admitted into evidence the complaint, the information, the "Judgment of Community Supervision," and the "Discharge from Community Supervision" from K.T.'s 2013 DWI conviction. Otherwise, the hearing consisted of the parties' legal arguments.

The trial court denied the Department's motion for new trial, stating in its order that "the evidence does not support the conclusion that the acquittal expunction granted herein was prohibited by [Article] 55.01(c)." The Department then requested, and the trial court made, findings of fact and conclusions of law. The findings recite the facts outlined above about K.T.'s two DWI arrests, her prior conviction, the judgment of acquittal, the expunction order, and the Department's motion for new trial. The trial court concluded that because K.T. had not committed

4

the 2017 DWI, based on the jury's not guilty finding, it was not included in Section 3.01(2)'s definition of a criminal episode—the commission of two or more offenses when "the offenses are the repeated commission of the same or similar offenses":

14. Texas Penal Code 3.01 requires the commission of two offenses prior to the formation of a criminal episode. The conviction in [the 2013 DWI] is one commission of an offense. However, the acquittal in [the 2017 DWI] is not a "repeated commission" of the same or similar offense.

15. The Department's assertion that the arrest for an offense is the equivalent of the commission of the offense is incorrect as a matter of law.

16. Accordingly, the Court rejects the Department's assertion that [the 2017 DWI] is part of the same criminal episode as [the 2013 DWI].

Tex. Penal Code Ann. § 3.01(2). Thus, the trial court denied the Department's new-trial motion because "[t]he 'Article 55.01(c) exception to acquittal expunction entitlement does not apply.'"

## III. ERROR PRESERVATION

Before we review the Department's appellate issues, we address K.T.'s contention that the Department has failed to preserve error by failing to either request additional or amended findings and conclusions or by failing to object to the findings and conclusions that the trial court made. *See* Tex. R. App. P. 33.1 (setting out procedure for preserving appellate complaint); Tex. R. Civ. P. 298 (setting out procedure for requesting additional or amended findings). We disagree with K.T.

5

First, in its motion for new trial, the Department objected to a construction of the statute that would allow expunction of K.T.'s 2017 DWI arrest records; not only did the trial court deny the Department's motion raising that argument, it expressly rejected the Department's proposed construction of Article 55.01(c) in its conclusions of law. The Department thus satisfied the requirements of Rule 33.1 by bringing its statutory argument to the trial court's attention and obtaining a ruling. *See In re Kajima Int'l, Inc.*, 139 S.W.3d 107, 110 (Tex. App.—Corpus Christi–Edinburg 2004, orig. proceeding). The Department was not required to engage in an exercise in futility by reasserting the same argument the trial court had already rejected.

Even if the Department had not complied with Rule 33.1—because this case involves no factual disputes and turns solely on the legal issue of the construction of a statute and the conclusions of law explaining that construction—our authority to review conclusions of law de novo obviates the need for the Department to follow traditional error-preservation procedure in the trial court. *See Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 786 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Nor was it necessary for Texcel to take exception to the trial court's adverse conclusion of law that Texcel had failed to prove its defense in order to challenge that conclusion on appeal."); *Argo Data Res. Corp. v. Shagrithaya*, 380 S.W.3d 249, 264 (Tex. App.—Dallas 2012, pet. denied) ("We are not obligated to give deference to the trial court's legal conclusions and, as the arbiter of the law, we have the duty to evaluate those conclusions independently."); *Sammons v. Elder*, 940 S.W.2d 276, 280 (Tex. App.—

Waco 1997, writ denied) (stating that because appellate courts may always review conclusions of law, former Rule of Appellate Procedure 52(a) did not require an objection to a conclusion of law as a predicate to appellate review); *Sears, Roebuck & Co. v. Nichols*, 819 S.W.2d 900, 903 (Tex. App.—Houston [14th Dist.] 1991, writ denied) ("Conclusions of law are always reviewable by an appellate court."); W. Wendell Hall et al., *Hall's Standards of Review in Texas*, 50 St. Mary's L.J. 1104, 1343 (2019) (stating that "'conclusions of law in a nonjury trial are reviewable . . . [even] without preservation' under Texas Rule of Appellate Procedure 33.1"). Nor was there any need for the Department to request any additional fact findings in the absence of any factual dispute. *See* Tex. R. Civ. P. 298; *Trelltex*, 494 S.W.3d at 785–86 (stating that trial court found underlying facts relevant to limitations defense because "[n]o party ha[d] contended that any other disputed facts needed to be resolved in order to determine whether [appellee's] claims for breach of contract regarding those underpayments were barred by limitations. For these reasons, no request for additional findings was necessary to preserve [appellant's] limitations issue for appellate review").

Accordingly, we hold that the Department preserved any error arising from the trial court's ruling, and we will address the Department's issues.

## IV. ARTICLE 55.01(C) CONSTRUCTION

In its two issues, the Department argues that K.T. is not entitled to an expunction of her acquitted charge under Article 55.01(c) and, therefore, that the evidence is legally insufficient to conclude that K.T. was entitled to an expunction.

### A. STANDARD OF REVIEW

We review the ruling on a petition for expunction under an abuse-of-discretion standard. *State v. T.S.N.*, 547 S.W.3d 617, 620 (Tex. 2018). Under this standard, we afford no deference to the trial court's legal determinations because a court has no discretion in deciding what the law is or in applying it to the facts. *Id.* Thus, we review de novo the trial court's legal conclusions made as part of the expunction determination. *Id.* Here, "the trial court's ruling on the expunction request hinge[s] on a question of law because it require[s] the interpretation of [A]rticle 55.01; therefore, it is subject to de novo review." *Id.*

### B. STATUTORY-CONSTRUCTION LAW

We analyze statutes "as a cohesive, contextual whole" with the goal of effectuating the Legislature's intent, employing the presumption that the Legislature intended a just and reasonable result. *Id.* We must apply the plain meaning of the statutory language "unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Id.* at 621; *see* Tex. Gov't Code Ann. § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed

8

accordingly."). We presume that when enacting a statute, the Legislature intended to comply with the United States and Texas Constitutions, to make the entire statute effective, to achieve feasible execution, and to favor the public interest over any private interest. Tex. Gov't Code Ann. § 311.021; *see also* Tex. Penal Code Ann. § 1.05(b) (providing that Government Code Sections 311.011 and 311.021, part of the Code Construction Act, apply to the Penal Code "[u]nless a different construction is required by the context"). Grammar and punctuation rules can also inform proper construction. *See* Tex. Gov't Code Ann. § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."); *Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 132 (Tex. 2018). Finally, we must liberally construe the Code of Criminal Procedure "to attain the objects intended by the Legislature: [t]he prevention, suppression, and punishment of crime." Tex. Code Crim. Proc. Ann. art. 1.26; *see also* Tex. Penal Code Ann. § 1.05(a) (eschewing strict construction of Penal Code and requiring construction of its terms "according to the[ir] fair import . . . , to promote justice and effect the [Penal Code's] objectives").

## C. STATUTORY TEXTS

Code of Criminal Procedure Article 55.01(a) provides that a person arrested for a felony or misdemeanor "is entitled to have all records and files relating to the arrest expunged if . . . the person is tried for the offense for which the person was arrested

9

and is . . . acquitted by the trial court, except as provided by [s]ubsection (c)." Tex.

Code Crim. Proc. Ann. art. 55.01(a)(1)(A). Subsection (c) further provides that

> [a] court may not order the expunction of records and files relating to an arrest for an offense for which a person is subsequently acquitted, whether by the trial court, a court of appeals, or the court of criminal appeals, if the offense for which the person was acquitted arose out of a criminal episode, as defined by Section 3.01, Penal Code, and the person was convicted of or remains subject to prosecution for at least one other offense occurring during the criminal episode.

*Id.* art. 55.01(c).

> Penal Code Section 3.01 defines a criminal episode as
>
> the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances:
>
> (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or
>
> (2) the offenses are the repeated commission of the same or similar offenses.

Tex. Penal Code Ann. § 3.01. We must decide, therefore, what the Legislature meant by referring to Penal Code Section 3.01 in Article 55.01(c). We hold that the Legislature did not mean to prohibit expunction of the arrest records of an acquitted offense simply because the acquitted person had once before been convicted of a separate, but same or similar type, of offense.

10

## D. ANALYSIS

Expunction is a statutory privilege, not a right. *In re State Bar of Tex.*, 440 S.W.3d 621, 624 (Tex. 2014) (orig. proceeding). The purpose of the expunction statute is to protect wrongfully accused persons from inquiries about their arrests but not to eradicate all evidence of wrongful conduct. *Id.* That the Legislature has provided for expunction under "limited, specified circumstances" shows its intent to under those circumstances "free persons from the permanent shadow and burden of an arrest record, even while requiring arrest records to be maintained for use in subsequent punishment proceedings[,] and to document and deter recidivism." *T.S.N.*, 547 S.W.3d at 623; *see also* Tex. Penal Code Ann. § 1.02(4) (listing purposes and objectives of the Penal Code, including "to safeguard conduct that is without guilt from condemnation as criminal").

In construing Article 55.01(c), we rely on the supreme court's guidance and approach to construing Article 55.01(a). *See, e.g.*, *T.S.N.*, 547 S.W.3d at 621–23; *State Bar of Tex.*, 440 S.W.3d at 624–27; *Harris Cty. Dist. Attorney's Office v. J.T.S.*, 807 S.W.2d 572, 573–74 (Tex. 1991). In *T.S.N.*, the supreme court held that Article 55.01's expunction scheme is neither completely arrest-based, nor offense-based. 547 S.W.3d at 623. In so holding, it explained that "subsection (a)(1) concerns acquittals and pardons, with clear instructions provided as to multiple offense arrests under subsection (c)." *Id.*

11

Article 55.01(c) refers directly to Penal Code Section 3.01's definition of a "criminal episode," which includes "the *commission* of two or more offenses . . . [that] are the repeated *commission* of the same or similar offenses." Tex. Penal Code Ann. § 3.01(2) (emphasis added). The word commission is not defined in the Penal Code, but the Penal Code uses the phrase "commission of" in defining the elements of some offenses. *See, e.g.*, *id.* § 22.02(a)(2) (aggravated assault with a deadly weapon). The word's generally accepted meaning is "the act of committing, performing, or doing." Webster's Third New Int'l Dictionary 457 (2002); *see also Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011) ("When determining the fair, objective meaning of an undefined statutory term, our Court may consult standard dictionaries."). Black's Law Dictionary defines the root verb commit as "[t]o perpetrate (a crime)," and Webster's defines it as "to do or perform." *Commit*, Black's Law Dictionary (11th ed. 2019); Webster's Third New Int'l Dictionary 457 (2002). Thus, we conclude that the use of the word commission in this context contemplates its commonly understood meaning of the actual performance of at least two "same or similar offenses." Tex. Penal Code Ann. § 3.01(2).

To prove "commission of" an offense, the State must prove each element of that offense beyond a reasonable doubt. *See* Tex. Code Crim. Proc. Ann. art. 38.03; Tex. Penal Code Ann. § 2.01. That a person has been arrested, confined, indicted for, or otherwise charged with an offense does not allow an inference of guilt at trial. *See* Tex. Code Crim. Proc. Ann. art. 38.03; Tex. Penal Code Ann. § 2.01. Here, K.T.

12

showed via her acquittal judgment that the State failed to meet its evidentiary burden to prove that she committed DWI in connection with her 2017 arrest. Therefore, there is no evidence in the record that K.T. repeatedly committed DWI; instead, the record shows that she has "commi[tted]" only the 2013 DWI. *See* Webster's Third New Int'l Dictionary 1924 (2002) (defining "repeated" as "renewed or recurring again and again" and "done . . . again").

The Department's construction of Article 55.01(c)'s incorporation of Section 3.01(2) attempts to add words to the statute's plain language. The Department would read Section 3.01(2) to include in a criminal episode "the repeated [arrest for or] commission of the same or similar offenses." But to read these additional words into the statute would deviate from the plain meaning of the word commission intentionally used by the Legislature. Additionally, the Department's construction fails to take into account the expunction statute's purpose as well as the Penal Code's directives against strict construction and in favor of a construction that safeguards conduct that is without guilt from being condemned as criminal. *See* Tex. Penal Code Ann. §§ 1.02(4), 1.05(a); *T.S.N.*, 547 S.W.3d at 623; *see also* Tex. Code Crim. Proc. Ann. art. 37.12 (providing that when "acquitted, the defendant shall be at once discharged from all further liability upon the charge for which he was tried"); *Ex parte Ferris*, No. 05-19-00835-CV, 2020 WL 5868217, at *4–5 (Tex. App.—Dallas Oct. 2, 2020, no pet. h.) (en banc) (holding that Department's construction of term "criminal episode" as used in Section 55.01(c) "would lead to absurd results in the context of

expunction"); *cf., e.g., Brinegar v. United States*, 338 U.S. 160, 166–71 (1949) (holding that officer's prior knowledge of suspect's illegal liquor-running activities, including officer's prior arrest of suspect, could be considered in establishing probable cause for subsequent stop and arrest for liquor running); 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 3.2(d) (6th ed. 2020) (discussing when prior arrest or prior conviction is properly considered in probable-cause determination and discussing that prior arrest may be considered more relevant when for a similar offense).

The Department relies on opinions from our sister courts of appeals that come to the same conclusion as the Department. *See Ex parte J.A.B.*, 592 S.W.3d 165, 169 (Tex. App.—San Antonio 2019, no pet.); *Ex parte Rios*, No. 04-19-00149-CV, 2019 WL 4280082, at *2–3 (Tex. App.—San Antonio Sept. 11, 2019, no pet.) (mem. op.); *see also In re Expunction of T.D.N.*, No. 08-19-00164-CV, 2020 WL 5627222, at *2–6 (Tex. App.—El Paso Sept. 21, 2020, no pet. h.); *In re M.T.R.*, No. 01-18-00938-CV, 2020 WL 930842, at *3–4 (Tex. App.—Houston [1st Dist.] Feb. 27, 2020, no pet.); *Ex parte R.A.L.*, No. 04-19-00479-CV, 2020 WL 557542, at *2 (Tex. App.—San Antonio Feb. 5, 2020, pet. denied).[1] The San Antonio cases, as well as the El Paso and Houston First cases that were decided after briefing in this case, rely on criminal-

[1]We decline to ascribe any precedential meaning to the supreme court's denial of the petition in *R.A.L. See Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006) ("[D]eclining to review a case is not evidence that the Court agrees with the law as decided by the court of appeals.").

case opinions holding that Penal Code Section 3.01(2) "does not impose a particular time frame within which the same or similar offenses must be repeated." *See Waddell v. State*, 456 S.W.3d 366, 369 (Tex. App.—Corpus Christi–Edinburg 2015, no pet.); *Green v. State*, 242 S.W.3d 215, 219–20 (Tex. App.—Beaumont 2007, no pet.); *Baker v. State*, 107 S.W.3d 671, 673 (Tex. App.—San Antonio 2003, no pet.); *Guidry v. State*, 909 S.W.2d 584, 585 (Tex. App.—Corpus Christi–Edinburg 1995, pet. ref'd); *see also Duncan v. State*, No. 08-12-00328-CR, 2013 WL 5716179, at *2 (Tex. App.—El Paso Oct. 18, 2013, no pet.) (not designated for publication) ("To be characterized as a single criminal episode, multiple offenses occurring on different dates, in different places, and against several complainants must either: (1) be the same or similar; (2) share a common scheme or plan; or (3) have been repeated in a similar fashion."). But those criminal cases are inapposite; in all of them, the appellants had been convicted—either by a jury or on their own guilty pleas—of two or more offenses arising out of the same criminal episode as defined in Section 3.01(2). *Waddell*, 456 S.W.3d at 367; *Green*, 242 S.W.3d at 217; *Baker*, 107 S.W.3d at 672; *Guidry*, 909 S.W.2d at 584–85. None of these cases hold that an acquitted offense and a single prior conviction for the same or similar type of offense constitutes the "repeated commission" of the same or similar offense. For that reason, these underlying cases should not inform our construction of Section 3.01's use in Article 55.01(c). Thus, we must respectfully disagree with the courts holding that a single

15

prior conviction for the same or similar offense bars expunction of an acquitted offense.

Only the El Paso case, *T.D.N.*, addresses whether one acquittal and one conviction for the same or similar offense constitute the "repeated commission" of the same or similar type of offense under Article 55.01(c). That court pointed to "express language in Article 55.01(c) that allows for a single conviction to establish the predicate for a 'criminal episode,'" holding that "the very provision that adopts the definition of a 'criminal episode' also allows for a single conviction, or even the possibility of a conviction, to block an expunction." *T.D.N.*, 2020 WL 5627222, at *5–6. But this analysis ignores that the definition in Penal Code Section 3.01(2)— expressly incorporated into Article 55.01(c)—requires a showing that at least two offenses were committed and that in a case such as this one, when the evidence shows one acquittal and only one conviction for the same or similar type offense, there is no repeated commission of the same or similar type offense. Accordingly, we cannot adopt the El Paso court's reasoning contrary to the statutes' plain language.

As the supreme court did in *T.S.N.*, we also look to other parts of the expunction scheme, including Article 55.02, and conclude that the expunction chapter as a whole supports our construction of subsection (c)'s plain language. *See* 547 S.W.3d at 620, 624 (looking to Article 55.02 in construing meaning of Article 55.01). For example, Article 55.02, Section 2(b), which lists the items that must be included in an expunction application, does not require a person to include any

16

information regarding convictions for prior, similar offenses; instead, it requires information only about the arrest for the acquitted offense. Tex. Code Crim. Proc. Ann. art. 55.02, § 2(b).

The Department, on the other hand, points to parts of subsection (a)(2) of Article 55.01 to support its construction. In subsection (a)(2), the Legislature provided for the expunction of arrest records for a charge that is dismissed or quashed as a result of participation in a veteran's-court or mental-health-court program but only for the first charged offense disposed of in this way. *Id.* art. 55.01(a)(2)(A)(ii)(a), (b), (a-3)(1), (a-4)(1). The Department argues that this limitation on additional expunctions of this type shows that the Legislature was concerned with deterring the repeated commission of offenses. But this argument ignores the specific purposes and functions of these two types of courts. The mental-health court was created "to integrate treatment services for mental illness in the processing of cases in the judicial system, and thereby divert people with mental illness away from the criminal justice system and into treatment." S. Research Ctr., Bill Analysis, H.B. 2609, 78th Leg., R.S. (2003). And the veteran's-court program was created to assist current or former United States armed forces members charged with crimes whose criminal conduct was "materially affected" by "an injury or illness that resulted from the defendant's military service in a combat zone or hazardous area." Bill Summary, S.B. 1940, 81st Leg., R.S. (2009). Allowing subsequent expunctions in such cases would frustrate the very purpose of these diversionary programs. Thus, these

17

factually distinguishable limitations on subsequent expunctions do not inform our construction of Article 55.01(c) under the facts presented here.

The Department also points to Alcoholic Beverage Code Section 106.12, which allows a minor who has been convicted of only one offense under that code to have the records of that conviction expunged when the minor turns twenty-one. Tex. Alco. Bev. Code Ann. § 106.12. Subsequent juvenile convictions under that code cannot be expunged. *Id.* But that section is likewise inapposite to our analysis because Article 55.01(a)(1) deals with acquittals, not subsequent convictions.

The Department suggests that we should interpret subsection (c) to fulfill the purpose of excluding repeat offenders of the same or similar offenses from having their records expunged so as to discourage recidivism. But this argument ignores the plain language of Penal Code Section 3.01 and Article 55.01(c), as well as the context in which subsection (c) was enacted. *See* S. Research Ctr., Bill Analysis, Tex. C.S.S.B. 840, 76th Leg., R.S. (1999) (stating that the purpose of the 1999 amendments to Article 55.01 that added subsection (c) was to provide for the automatic expunction of certain expunction records); *see also Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 442–44 (Tex. 2009) (op. on reh'g) (explaining that court should not consult extrinsic aids such as legislative history when statutory language is unambiguous but addressing and overruling respondent's extrinsic-evidence arguments contrary to statute's plain language on denial of rehearing motion).

The plain language of subsection (c) prohibits the expunction of the arrest record for an acquitted offense if that acquittal arose from a "criminal episode" as defined in Penal Code Section 3.01, which requires "the repeated *commission* of the same or similar offenses." Tex. Penal Code Ann. § 3.01(2) (emphasis added). To read Article 55.01(c) as the Department contends gives short shrift to the cohesive, contextual structure and operation of the entire statutory expunction scheme. Therefore, we cannot agree with the Department's view on the effect of the definition of "criminal episode" on K.T.'s entitlement to expunction when the Legislature's contrary meaning is apparent from the context of the entire statutory scheme and the clear definition of criminal episode in the Penal Code. After a review of the entire statutory scheme, we conclude that the plain language of Article 55.01(c) provides that a person arrested for and charged with DWI in 2017 who is later acquitted—i.e., was not proven beyond a reasonable doubt to have committed the offense—is entitled to have those arrest records expunged even though she has a prior 2013 DWI conviction. *See Ferris*, 2020 WL 5868217, at *4–5 (concluding same). Therefore, the trial court did not abuse its discretion by ordering the expunction of K.T.'s 2017 DWI arrest records.

### E. RESPONSE TO DISSENTING OPINION

We must respond briefly to the dissenting opinion.

First, in disagreeing with the trial court's expunction decision, the dissenting opinion takes issue with the trial court's conclusion that "[t]he Article 55.01(c)

19

exception . . . does not apply . . . because the two cases could not have been joined at trial." Dissenting Op. at 7–9. But this conclusion of law was an independent reason for the trial court's judgment; it is not the basis of the majority's analysis and should not be construed as part of the majority's holding. Likewise, our majority analysis does not include—and therefore is not based on—a determination that Penal Code Section 3.01(2) requires a temporal or factual connection between the two offenses that form the basis of "the repeated commission of the same or similar offenses." The dissenting opinion's discussion of this aspect of Section 3.01(2) should not inform an understanding of the majority's disposition. *See* Dissenting Op. at 4.

Finally, the dissenting opinion concludes that the word "commission" as used in Penal Code Section 3.01(2) and incorporated into Article 55.01(c) means "arrested for"; in other words, the dissent construes Article 55.01(c) to prohibit expunction of an acquitted offense if the person has committed acts that cause the person to be placed under arrest for the acquitted offense and convicted of another same or similar offense. Dissenting Op. at 12–13. But the Legislature did not use the word "arrest" in Penal Code Section 3.01(2), nor did it indicate in Article 55.01(c) that it intended to ascribe a broader meaning to Section 3.01(2) than its plain language. The Legislature knows how to differentiate between an arrest—"a technical term possessing a long, established history in the common law," *Medford v. State*, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000)—and the "commission of an offense," Tex. Penal Code Ann. § 3.01. We should therefore presume that its incorporation of Section 3.01(2),

20

which does not use the word "arrest," in Article 55.01(c) was intentional. *See In re Xerox Corp.*, 555 S.W.3d 518, 527–29 (Tex. 2018) (orig. proceeding).

## V. CONCLUSION

Because K.T.'s 2013 DWI conviction and 2017 DWI acquittal do not meet the definition of a criminal episode, she was entitled to the expunction of her 2017 DWI arrest records. *See* Tex. Code Crim. Proc. Ann. art. 55.01(a)(1). We overrule the Department's two issues on appeal and affirm the trial court's order granting the expunction.

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered: October 22, 2020